J-S24041-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,    :     IN THE SUPERIOR COURT OF
                                           :             PENNSYLVANIA

                Appellee         :
                                             :
                v.                :
                                             :
GARY THOMAS SNYDER,           :
                                             :
               Appellant        :          No. 3299 EDA 2014

Appeal from the Order entered on October 29, 2014
in the Court of Common Pleas of Chester County,
Criminal Division, No. CP-15-CR-0004049-2002

BEFORE: GANTMAN, P.J., ALLEN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:            **FILED MAY 11, 2015**

Gary Thomas Snyder ("Snyder") appeals from the Order denying his Petition (hereinafter "the Petition for Relief") seeking exemption from being required to register with the Pennsylvania State Police ("PSP") as a sex offender for his lifetime, pursuant to the Sex Offender Registration and Notification Act ("SORNA"),[1] and challenging SORNA's constitutionality concerning its retroactive application. We affirm.

Between July 1994 and August 1995, Snyder sexually assaulted a seven-year-old girl, A.G., on several occasions. Snyder, *inter alia*, (1) fondled A.G.'s chest; (2) kissed her on the mouth after removing both of their clothes; (3) inserted his finger into her vagina; and (4) forced her to touch his penis with her hand. A.G. stated that after each assault, Snyder

---

[1] *See* 42 Pa.C.S.A. § 9799, *et seq.*

threatened that he would harm her family if she told anyone about what had happened.

A.G. reported the sexual assaults to the police several years later, when she was fifteen-years-old. In September 2002, the Commonwealth charged Snyder with several offenses, including four counts each of indecent assault of a minor less than thirteen years of age and corruption of minors.[2] On February 13, 2003, Snyder pled guilty to two counts each of indecent assault of a minor less than thirteen years of age and corruption of minors. Snyder's guilty plea was the result of a negotiated agreement, wherein the Commonwealth agreed that it would withdraw the remaining charges and recommend a sentence of eight years of probation, the first nine months of which would be under electronic home monitoring. Notably, at the time of Snyder's plea, the offense of indecent assault of a minor less than thirteen years of age required a ten-year period of sex offender registration under Megan's Law II.[3]

In its Pa.R.A.P. 1925(a) Opinion, the trial court set forth what transpired thereafter as follows:

> [Snyder] was sentenced on June 9, 2003[, pursuant to the negotiated plea agreement,] … [to] an aggregate sentence of 8 years [of] probation. He was also ordered to undergo 9 months of electronic home confinement, undergo [a] sex offender evaluation, a psychological evaluation, to complete a Sex

[2] **See** 18 Pa.C.S.A. §§ 3126(a)(7), 6301(a)(1).

[3] **See** 42 Pa.C.S.A. § 9795.1(a)(1). This statutory provision was replaced by the provisions of SORNA, which became effective in December 2012. **See** 42 Pa.C.S.A. § 9799.41.

Offender Program, and have no unsupervised contact with minors. As sentenced, his probation extended through June 9, 2011. [Snyder] did not file a direct appeal from [his] judgment of sentence.

On June 25, 2008, the Chester County Probation Department sought a bench warrant for [Snyder's] arrest[,] [based] upon allegations of [his] probation violation, alleging he had failed to complete the Sex Offender Program and had unsupervised contact with minors on multiple occasions. [Snyder] was taken into custody and imprisoned on September 9, 2008, and following [a] hearing …, [Snyder] was found in violation of his probation. He was sentenced to 3 to 23 months [of] incarceration, subject to conditions, given credit for time served, and made eligible for parole after serving his minimum sentence. … He was paroled on December 3, 2008, and completed probation supervision on February 12, 2011. He was not on probation when he filed the instant [P]etition [for Relief] seeking relief from the lifetime registration requirement. [Snyder] began registering as a sex offender on June 12, 2003. Under Megan's Law II[,] he was required to register through mid-June 2013.

On December 3, 2012, the Commander of the Megan's Law Section of the [PSP] notified [Snyder] in writing that [pursuant to SORNA,] he was required to register as a sexual offender with the [PSP] for [his l]ifetime as a Tier III sexual offender,[4] and to verify his registration information in person every 3 months at an approved registration site. He was further advised that he now appeared on the Megan's Law Registry as a sexual offender. … SORNA increased [Snyder's] reporting requirements by a multiple of four. Under Megan's Law III, he was required to appear only once each year[,] at a location designated by the [PSP,] to verify his residence and be photographed. Under SORNA, Snyder must register a wider array of information with the PSP, including aliases, nicknames, internet identifiers under which he communicates or posts, date of birth, social security

---

[4] Under SORNA, a conviction for indecent assault of a minor less than thirteen years of age is designated as a "Tier III sexual offense," subjecting an individual convicted of this offense to a lifetime registration requirement. *See* 42 Pa.C.S.A. § 9799.14(d)(8); *id.* § 9799.15(a)(3). Pursuant to 42 Pa.C.S.A. § 9799.13(3)(i), Snyder was required to register for his lifetime because he had not yet fulfilled his ten-year period of registration under Megan's Law when SORNA became effective in December 2012.

number, telephone number, passport, driver's license, professional licenses, and license plate or motor vehicle registration numbers.

On September 23, 2013, [Snyder] filed the [Petition for Relief, wherein he] essentially contends that the effects upon him of SORNA are punitive in nature, and not mere collateral consequences of his conviction, thereby rendering its *ex post facto* application to him unconstitutional. He further contends that he is legally entitled to the benefit of the bargain made in his plea agreement with the Commonwealth, which included the limitation that he register as a sexual offender for not more than ten years.[5]

Trial Court Opinion, 10/29/14, at 2-5 (footnotes added, citations omitted).

By an Order entered on October 29, 2014, the trial court denied the

Petition for Relief.[6] Snyder timely filed a Notice of Appeal. The trial court

---

[5] Snyder has abandoned on appeal his claim that he is entitled to specific enforcement of the ten-year sex offender registration period because it was part of his negotiated plea agreement. Indeed, this Court previously rejected such a claim in **Commonwealth v. Partee**, 86 A.3d 245 (Pa. Super. 2014). In **Partee**, the defendant had (1) entered a negotiated *nolo contendere* plea to a sexual offense that required a ten-year period of registration under Megan's Law II; (2) subsequently violated his probation; and (3) thereafter received notification following the enactment of SORNA that he was now required to register with the PSP as a sex offender for life. **Id.** at 246. This Court held that the defendant was not entitled to specific performance of the negotiated plea agreement because, "having failed to abide by the terms of the plea bargain, that agreement [was] no longer in effect[.]" **Id.** at 250. Like the situation in **Partee**, Snyder's violation of his probation abrogated the plea agreement.

[6] The trial court properly determined that the Petition for Relief does not fall under the provisions of the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. **See** Trial Court Opinion, 10/29/14, at 7; **see also Commonwealth v. Bundy**, 96 A.3d 390, 394 (Pa. Super. 2014) (collecting cases and holding that "the statutory and rule-based requirements governing a PCRA petition do not apply to a challenge to the retroactive application of [SORNA], but [] this Court has jurisdiction to review orders confirming or rejecting a retroactive registration requirement.").

did not order Snyder to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Snyder presents the following issues for our review:

Whether the Court of Common Pleas committed error:

I.    In failing to grant [the P]etition [for Relief] because the Court failed to consider that [Snyder] should only be required to register for ten (10) years[,] as his offenses were part of a single criminal episode or course of conduct[?]

II.   In failing to grant [the P]etition [for Relief] because the Court failed to consider that changing, or expanding and extending, [Snyder's] registration and reporting requirements is a form of punishment and thus, [retroactive] application of SORNA violates the *Ex Post Facto* clauses of the United States and Pennsylvania Constitutions[?]

Brief for Appellant at 4.

Because Snyder's issues implicate a pure question of law, our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Raban***, 85 A.3d 467, 468 (Pa. 2014); ***see also In the Interest of J.B.***, 107 A.3d 1, 14 (Pa. 2014) (addressing a challenge to the constitutionality of the retroactive application of SORNA and observing that "a party challenging a statute must meet the high burden of demonstrating that the statute clearly, palpably, and plainly violates the Constitution." (citation and quotation marks omitted)).

Snyder first argues that the trial court erred by denying the Petition for Relief because his offenses were part of a single criminal episode or course of conduct, and, therefore, he should only be required to register as a sex

- 5 -

offender for ten years, as opposed to his lifetime. Brief for Appellant at 8, 9.

Specifically, Snyder contends as follows:

> When SORNA became the effective law, part of the reason that [Snyder] was reclassified as a lifetime registrant (Tier III) … was due to the language in 42 Pa.C.S. § 9799.14(d)(16)[,] which states that an individual is subject to lifetime registration if he or she has "[t]wo or more convictions of offenses listed as Tier I or Tier II sexual offenses." 42 Pa.C.S. § 9799.14(d)(16)[]. [Snyder is] of the opinion that this provision requiring lifetime registration only applies to repeat offenders and recidivists who are convicted of separate acts of misconduct that lead to separate and multiple convictions. This provision should not apply to individuals who engage in misconduct that results in one conviction with multiple criminal charges/offenses.

Brief for Appellant at 9.

This claim is waived because Snyder failed to preserve it for our review, having never raised it in the trial court. *See* Pa.R.A.P. 302(a) (stating that an issue cannot be raised for the first time on appeal); *see also Commonwealth v. Miller*, 80 A.3d 806, 811 (Pa. Super. 2013) (stating that "[b]y requiring that an issue be considered waived if raised for the first time on appeal, our [appellate C]ourts ensure that the trial court that initially hears a dispute has had an opportunity to consider the issue. This jurisprudential mandate is also grounded upon the principle that a trial court must be given the opportunity to correct its errors as early as possible." (citation and ellipses omitted));[7] *see also Commonwealth v. Colavita*, 993 A.2d 874, 891 (Pa. 2010) (stating that "[w]here the parties

---

[7] The trial court did not address Snyder's instant claim in its Pa.R.A.P. 1925(a) Opinion.

fail to preserve an issue for appeal, the Superior Court may not address that issue *sua sponte*." (citation omitted)).[8]

Next, Snyder argues that SORNA is punitive, and that the retroactive application of SORNA to him violates the *Ex Post Facto* Clauses of Article 1, § 10 of the United States Constitution and Article 1, § 17 of the Pennsylvania Constitution. **See** Brief for Appellant at 21-38.

A panel of this Court recently addressed this precise issue in **Commonwealth v. Perez**, 97 A.3d 747 (Pa. Super. 2014). Snyder acknowledges **Perez** in a footnote, but argues that its holding does not apply to his particular circumstances. Brief for Appellant at 21 n.12. Contrary to Snyder's assertion, we determine that **Perez** is directly applicable and requires rejection of his constitutional challenge.

In **Perez**, the defendant committed the offense of indecent assault prior to SORNA's enactment, and entered a negotiated *nolo contendere* plea to this charge. **Perez**, 97 A.3d at 749. At the time of his offense, the version of Megan's Law then in effect required him to register as a sex offender for 10 years. **Id.** Under SORNA, which went into effect shortly before the defendant's plea, he was required to register for 25 years. **Id.** Prior to sentencing, the defendant filed a motion to declare SORNA unconstitutional on the ground that the *Ex Post Facto* Clauses in the federal and state constitutions prohibited retroactive application of the 25-year

---

[8] Nevertheless, we observe that Snyder's crimes did not constitute a single criminal episode, as he had sexually assaulted A.G. on multiple separate occasions.

registration requirement to him. *Id.* The trial court denied the motion and ordered the defendant to register for the next 25 years. *Id.*

On appeal, this Court observed that the defendant's challenge to the constitutionality of the retroactive application of SORNA must be evaluated under a two-step test, established by the United States Supreme Court in *Smith v. Doe*, 538 U.S. 84 (2003). *Perez*, 97 A.3d at 751 (citing *Smith*, 538 U.S. at 92 (stating that the two-step test for determining whether a civil remedy is punitive in nature requires an inquiry into (1) whether the legislature intended the statutory scheme to be punitive; and (2) only if the first step is met, "whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it civil.")); *see also Perez*, 97 A.3d at 750 n.4 (stating that "[a]lthough the [United States] Supreme Court has addressed the federal version of SORNA on prior occasions, it has never had the occasion to address its constitutionality vis-à-vis the *Ex Post Facto* Clause[,]" but acknowledging that most of the Courts of Appeals have concluded that SORNA does not violate the federal *Ex Post Facto* Clause).

Concerning the first step under *Smith*, the *Perez* Court declared that the General Assembly did not intend SORNA to be punitive in nature. *Perez*, 97 A.3d at 751 (citing 42 Pa.C.S.A. § 9799.11(b)(2), which sets forth legislative findings and a declaration of policy instructing that SORNA shall not be construed as punitive). Turning to the second step, the Court addressed whether SORNA constitutes "punishment" under the multi-factor

test articulated in **Kennedy v. Mendoza-Martinez**, 372 U.S. 144 (1963). **Perez**, 97 A.3d at 751 (stating that "[t]he Supreme Court has held that only the 'clearest proof' will suffice to override the legislature's preferred classification of the statute." (quoting **Smith**, 538 U.S. at 92)). The panel held, after conducting an exhaustive analysis of the seven **Kennedy** factors, that SORNA does not constitute punishment, and, therefore, was valid under the *Ex Post Facto* Clause of the United States Constitution. **Id.** at 752-59. The panel explained that all but one of the **Kennedy** factors weighed against finding SORNA punitive, stating, in sum, that (1) registration requirements historically are not regarded as punishment, unlike probation/parole, because individuals subject to SORNA are free to live and work where they wish, without supervision; (2) SORNA does not come into play upon a finding of scienter; (3) although SORNA has some aspects of retribution for past conduct, and deterrence of future criminal conduct, the statutory scheme primarily is regulatory, and the General Assembly is permitted to have some deterrent and retributive effects in its legislation, particularly where its goal is to prevent recidivism and protect the public; (4) SORNA is rationally related to a non-punitive purpose, namely the Commonwealth's interest in preventing crimes of a sexual nature; and (5) SORNA is not excessive in relation to its regulatory purpose of protecting the public from convicted sexual offenders, who pose a high risk of recidivism. **Id.** at 752-58. The **Perez** Court found that only one factor weighed in favor of finding SORNA punitive, *i.e.*, SORNA imposed an affirmative restraint on the

defendant by requiring him to appear in-person at a PSP facility a minimum of 50 times over the next 25 years. *Id.* at 752-54. However, the panel concluded that this single factor did not render SORNA punitive because, *inter alia*, "the restraint is relatively minor when balanced against the remaining factors." *Id.* at 758.

The ***Perez*** Court then proceeded to address the defendant's *ex post facto* claim under the Pennsylvania Constitution, and determined that it did not entitle him to relief:

> Article I, Section 17 of the Pennsylvania Constitution states that "[n]o *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed." Pa. Const. Art. I, § 17. This Court has recently held that "the standards applied to determine an *ex post facto* violation under the Pennsylvania Constitution and the United States Constitution are comparable." ***Commonwealth v. Rose***, 2013 PA Super 305, 81 A.3d 123, 127 (Pa. Super. 2013) (*en banc*). Our Supreme Court has previously declined to hold that the *Ex Post Facto* Clause of the Pennsylvania Constitution imposes greater protections than Article I, Section 10 of the Federal Constitution. ***See Commonwealth v. Gaffney***, 557 Pa. 327, 733 A.2d 616, 622 (Pa. 1999) (stating that Gaffney "failed to present any compelling reason for our departure from the standards appropriate for determining whether an *ex post facto* violation pursuant to the federal constitution has occurred[,] and we find no independent reasons for doing so[]").
>
> It is axiomatic that when presenting a claim for higher protections under the Pennsylvania Constitution, the [a]ppellant must discuss the following four factors:
>
> > 1) text of the Pennsylvania constitutional provision;
> >
> > 2) history of the provision, including Pennsylvania case-law;
> >
> > 3) related case-law from other states;

> 4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.
>
> ***Commonwealth v. Edmunds***, 526 Pa. 374, 586 A.2d 887, 895 (Pa. 1991). The ***Edmunds*** analysis is mandatory and a failure to provide it precludes the consideration of a state constitutional claim independent of its federal counterpart. ***See, e.g., Commonwealth v. Baker***, 621 Pa. 401, 78 A.3d 1044, 1048 (Pa. 2013) (concluding that Baker's failure to provide an ***Edmunds*** analysis precluded considering whether Article I, Section 13 of the Pennsylvania Constitution provided higher protections that the Eighth Amendment of the Federal Constitution on cruel and unusual punishments).
>
> Here, [a]ppellant's brief does not include the required ***Edmunds*** analysis to consider whether under this specific statute, the Pennsylvania Constitution would provide higher *ex post facto* protections than Article I, Section 10 of the Federal Constitution. … Because we have already resolved [the appellant's] federal *ex post facto* claim using [the] framework promulgated by the United States Supreme Court, and [a]ppellant does not argue that the Pennsylvania Constitution provides higher protection, his claim under the Pennsylvania Constitution likewise fails. ***See Baker, supra***; ***Edmunds, supra***.

***Perez***, 97 A.3d at 759-60.

In the instant case, although Snyder (1) argues that the retroactive application of SORNA's provisions violates the Pennsylvania Constitution's *Ex Post Facto* Clause; and (2) exhaustively discusses all seven ***Kennedy*** factors, related case law from other states, and policy considerations, like the situation in ***Perez***, he does not argue that the Pennsylvania Constitution's *Ex Post Facto* Clause provides greater protection than its federal counterpart. ***See, e.g.***, Brief for Appellant at 21 (wherein Snyder sets forth the respective language of both *Ex Post Facto* Clauses, but does

not assert that Pennsylvania's clause provides greater protection); **see also**

**Perez**, 97 A.3d at 760 (rejecting the appellant's challenge to the

constitutionality of SORNA under the Pennsylvania Constitution where he did

not argue that the state constitution provided greater protection than its

federal counterpart). Accordingly, we are compelled to apply the **Perez**

decision in rejecting Snyder's constitutional challenge.[9]

In conclusion, we understand Snyder's displeasure at having to

register for his lifetime as a sex offender, even though approximately nine

years had elapsed between the date of sentencing and the date he received

notice of his requirement to register for his lifetime under SORNA.

Nevertheless, the trial court's Order denying his constitutional challenge is

---

[9] In its Pa.R.A.P. 1925(a) Opinion, the trial court in the instant case points out that at least two other states have ruled contrary to **Perez**, holding that, under their respective state constitutions, the retroactive application of longer sexual offender registration periods under SORNA was unconstitutional. **See** Trial Court Opinion, 10/29/14, at 11-12 (citing **Gonzalez v. State of Indiana**, 980 N.E.2d 312 (Ind. 2013), and **State v. Williams**, 952 N.E.2d 1108 (Ohio 2011), as well as Judge Donohue's concurring opinion in **Perez**, **Perez**, 97 A.3d at 760-67). The trial court also suggests that further appellate consideration of the constitutional issues presented in the instant case is appropriate. **See** Trial Court Opinion, 10/29/14, at 12. However, it is axiomatic that a three-judge panel is bound by previous panel opinions unless overruled by this Court sitting en banc, our Supreme Court, or the United States Supreme Court. **Commonwealth v. Pepe**, 897 A.2d 463, 465 (Pa. Super. 2006); **see also Commonwealth v. Perez**, 2014 Pa. Super. LEXIS 2910 (Pa. Super. 2014) (denying Perez's petition for reargument). Accordingly, under the particular circumstances of this case, we are bound by the majority's holding in **Perez**, as **Perez** is directly on point.

correct under the current law.[10]

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/2015

---

[10] To the extent that Snyder argues SORNA violates his federal and state due process rights because it (1) did not afford him proper notice concerning his new registration requirement, and an opportunity to challenge the requirement; and (2) utilizes an irrebuttable presumption about sexual offenders' high risk of recidivism and impinges upon offenders' right to reputation, *see* Brief for Appellant at 15-20, 35-36, such claims are waived because they were not raised in, or fairly suggested by, Snyder's Statement of Questions Presented, nor were they preserved in the trial court. *See* Pa.R.A.P. 2116(a) (stating that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); Pa.R.A.P. 302(a). However, even if these claims were not waived, we would determine that they are without merit. First, the letter that the PSP sent Snyder in December 2012 adequately put him on notice that he was required to register for his lifetime under SORNA, and Snyder has, in fact, been permitted to challenge SORNA's registration requirement in the trial court and this Court. Second, though Snyder cites to our Supreme Court's decision in *In the Interest of J.B., supra*, in support of his claim that SORNA deprives him of due process by applying an irrebuttable presumption concerning recidivism, and impinges upon his right to reputation, he fails to acknowledge that the Supreme Court's holding in *J.B.* was limited to only juveniles. *Id.* at 2, 19-20 (holding that "SORNA violates *juvenile* offenders' due process rights through the use of an irrebuttable presumption[,]" where the presumption is not universally true and a reasonable alternative means exists for determining which juvenile offenders are likely to reoffend.) (emphasis assed)). Moreover, our research discloses no cases extending this holding to adult offenders under SORNA.